Good morning. May it please the court, Vicky Lai appearing on behalf of Appellant Curtis Coleman. We get another chance to talk about United States v. Garcia here. The court has asked the parties to address the import of United States v. Garcia. Before I get into the attenuation doctrine, I would like to set up the facts of this case. As in Garcia, the police committed illegal misconduct. Without any reasonable suspicion that Mr. or dangerous, the police frisked him with a substantial show of authority that included grabbing him on the back, ordering him to put his hands on the police car. They also physically escorted him to the police car when it was undisputed that the only crime that was suspected was not a terribly serious one. It was misdemeanor trespass. And the police took all these actions without asking Mr. Coleman or his companion, whom they also frisked, without asking them a single question about the trespass when the crime itself calls out for at least the question of what the relationship of these men were to the property. Didn't one of them leap over the fence and try and run away? Yes, Your Honor. One of the companions leaped over the fence. The officers said that they called Mr. Coleman and his companion, Mr. McQuay, over because they wanted to ask them why the third companion had leapt over the fence. Mr. Coleman and Mr. McQuay were outside the fence in the alleyway. So you said this called out for asking a question. Should they have asked the question at a distance? Is that what you're quarreling with? Well, when they called them to come out to the car, Mr. Coleman and Mr. McQuay actually came back out from the alleyway, was walking towards the car. Mr. McQuay was asking, why are you stopping us? I think at that point they were pretty close to the men. The men were walking towards the patrol car. They could have said we're stopping you because we want to ask you some questions about the trespass. The way they committed the frisk was probably the most dangerous way you can commit a frisk, because it really escalated the situation. They immediately grabbed Mr. McQuay, who by all counts was compliant, grabbed him by the back in a very heavy-handed way, pulled him over to the patrol car, ordered him to put his hands on the patrol car, and then proceeded to frisk him. Okay, now when he did frisk them, when he reached for the waistband, as I understand it, Mr. Coleman broke away and ran, didn't he? He struggled. He engaged in some restrictive movements. He never actually, the officer never actually lost hold of him, because he had at all times his hand on the, one hand on the back of Mr. Coleman's coat. So he actually never lost a hold of him, and right by the patrol car was a stop sign. He either pushed Mr. Coleman, or they both fell into the stop sign, and he was So it's dissimilar to Garcia in the sense that, if you can even call it an independent circumstance, because this occurred so quickly, there was the pat-down. Mr. Coleman immediately reacted to that pat-down by flailing and... Trying to get away. Right, well, I mean, he made restrictive movements. He never got away, but it was a... But that was his, are you suggesting he was just flailing and resisting, or he was, and not trying to get away from the officer? Well, there's a finding by the court below that he attempted to flee. So we're stuck with that finding, but what I'm saying is that underground versus Illinois, if you do the balancing test of when something is attenuated, one of the factors is temporal proximity. And in this case, everything happened so quickly, it's difficult to say that there was even an intervening circumstance, because it all flowed into one event. I mean, he was quick... Well, the intervening circumstance seems to be the fact that he tried to flee. Right, but it's unlike Garcia. In Garcia, what you had was a direction, an order to go to secondary. The defendant feigned compliance. He actually parked his car, he stopped at secondary, and then he committed a felonious car chase at 70 miles per hour. So the temporal proximity between the stop, the legal stop, and the discovery of marijuana in the trunk eventually after he was stopped is quite lengthy. The temporal proximity here is at the most seconds or minutes. And the intervening circumstance, it's hard to say it was intervening, because it happened so quickly after the frisk that it flowed into one event. Well, counsel, I take your point. The principle that Garcia establishes is that there is a new event. And unfortunately, a lot of these cases, as the Supreme Court has recognized, call for split-second judgments in these close encounters. And it works to the disadvantage of defendants and suspects, and it works to the disadvantage of the police because of the quick time frame. So I take your point that this happened quickly. But the reality is that as he was being frisked, as I understand it, the officer reached toward Mr. Coleman's waistband, he tried to break away and run. And he was prevented from it, so there was no great time frame. So what significance is there when somebody tries to flee and that is when the takedown happens and when, in fact, they find the gun or he tells them about the gun in his pocket? Well, I think the significance is that, as Brown v. Illinois says, is that in order to determine whether there's an attenuation so that the exclusionary rule does not apply, you have to conduct a balancing test. In this case, there is a finding that he attempted to flee, but there's also illegal misconduct on the part of the police. And in Washington, there's at least one appellate court that has read the obstruction statute in Washington to say that you need lawful police conduct to have an arrest for obstruction. So it's not even clear whether he committed a crime when he was reacting to the officer's heavy-handed approach. And so that is where I see the difference. Okay. Ms. Leijon, would you like to say something? I would. Thank you, Your Honor. Good morning. Mr. Hobbs, thank you. Thank you, Your Honor. Stephen Hobbs on behalf of the United States. I want to begin by talking about Garcia, although I have some things to say about the facts as well. I think Garcia stands for three propositions. The first is that flight is indicative or probative of standard car chase, as in Garcia, or it might be an attempt to break away and flee from an officer during a terrorist stop, as we have here. That act of flight is probative of criminal conduct and gives rise, at a minimum, to a new basis to detain and frisk the defendant in this case. More importantly, Garcia stands for the proposition that once the defendant flees, he can no longer assert that the evidence obtained during a subsequent search is the proof of the poisonous tree, with the exception of those rare situations in which the police are somehow intending to force or create a scenario where flight might occur. And just as in Garcia, where the defendant in that case, you know, and the court pointed out that there was certainly no basis to get the defendant to flee by asking to go to the secondary detention area, in this case, Detective Lamp wasn't seeking Mr. Coleman's flight when he asked him to come over to the patrol car. So, I think Garcia is squarely on point with this case. The search, even though it occurs within a compressed time, is attenuated and Mr. Coleman cannot... He didn't really flee here, did he? Absolutely, he attempted to flee. But the officer had his hand on the back of his coat, right? Yes. How could that be a fleet? He made it three or four feet, maybe more, maybe ten feet, if you look at the photographs. And then he ran in, very much like Hodari did, into another officer. By this time, the other individual who was involved is fighting with a third officer. What's the distance from the car to where he falls on the stop sign? I would estimate maybe 10 or 15 feet. But that, I would submit, is ultimately an irrelevant fact. The distance or the time, it's the action and the intent of a suspect in that case that's relevant. And I think that's the only reasonable rule, because otherwise, and I think this is at the essence of Garcia and Illinois v. Wardlow and the other cases that discuss this point, is that it would be wrong to perversely create an incentive that would motivate flight, give a suspect two bites at the apple. If he had broken away, would it make any difference if he had broken away and gotten 20 feet, 30 feet, around the block and was caught by a different detective driving up? I mean, that seems to be fundamentally an irrelevant fact when you're judging what is the defendant's action. I would also point out that... So what if he just kind of, you know, squiggled? I think in this case where the testimony is that he did much more than just squiggle, if, for instance, all we had was he had hesitated, as he did, to put his hands on the patrol car and then eventually complied and the pat-down occurred, then we could proceed to, maybe we wouldn't be raising that argument or the And so this wasn't just mild resistance. But that point is actually addressed in Garcia as well, because the third point in Garcia is that a suspect does not have a sort of self-help right or right to resist the lawful display of authority, and absent truly provocative actions by the police. And we know, as a practical matter, that's not what Mr. Coleman was doing in this case, because he told the officers what he was doing afterwards. He was asked, after they handcuffed him and lifted him up, why did he run? He said, because I had a gun in my pocket. I mean, I think that's as clear as that gets. Is it the government's position that before the encounter happened that they had reasonable suspicion to pat him down? Yes. Why is that? So focusing just on the reasonable suspicion and working backwards, I think the facts are far more, and the undisputed facts found both by Magistrate Judge Sushita and Judge Kuhnauer, establish after, just picking up after the trespasses occurring directly in the officer's site, after they see these three individuals go down onto property, clearly marked private property, no trespassing, call 911, down a path which is probably no bigger than this podium, and one person climbs over a garbage can, which is about the size of this podium, into the backyard. That's happening in the officer's presence. They asked Mr. Coleman and his companion to stop and to come over to the patrol car. And the officers were very clear that if they had done that, they wanted to ask them questions about what they were doing. A classic Terry Stop situation. The companion did come over to the patrol car. He was vociferous, he was angry, he was yelling at the officers, but he came over to the patrol car. So let me ask you one thing right before you, is this trespass a misdemeanor trespass or is it a felony trespass? It's a misdemeanor trespass committed in the officer's presence. And they clearly have, under Washington law, a basis to at least investigate. And the officers were very clear. We didn't know exactly what was going on here. We didn't conceivably, it was very clear to the officers it wasn't their house. Their actions undisputably suggested it wasn't their house. But the two officers who were asked the question said we wanted to ask them questions. We didn't get a chance to do that before Mr. Coleman struggled and attempted to flee. But to pick up on your previous point, Mr. Coleman did not comply. And he repeatedly did not comply with the request to come over to the patrol car. It was only after they asked three times would you come over here so we can talk to you, the very questions that counsel wants the officers to ask, that Detective Lamp moves over to Mr. Coleman. And I would submit that's the only ultimately prudent thing a detective can do in that situation. So what gives them the right to pat him down? So to pat down, he's already failed to comply three times. In the officer's words, he believes he's looking for a way to run. He comes over, he puts his hand on Mr. Coleman's back and he starts to move in the patrol car where he starts to stiffen up. Doesn't want to walk over to the patrol car. And then when he gets into the patrol car, doesn't initially comply with the request to put his hands on the hood. At that point, and this is Detective Lamp responding to the cross-examination, Detective Lamp at 100 on the supplemental record, he was stopped for trespass. He was patted down because of the stiffening, the body behavior, all the things he was showing me, the pausing and the stiffening of the body that was leaving me to believe there could be a weapon. This case is really remarkably similar to the case we cite in our brief. Well, he made the decision to pat him, as I understand it, he ordered him over to the car so he could pat him. He made the decision to pat him down before he ordered him over to the car. No, I don't think so. I don't think the record supports that at all. I think what he said is, I needed him in a position where I could talk to him safely. When he wouldn't come over, I went to be near him. When I tried to get him to the patrol car, he's resisting, he's not complying, and I began to be concerned that he had a weapon. And that is exactly like Burkhead. I mean, there might be some other innocent explanation for Mr. Coleman's actions. Maybe he had drugs, maybe he was just angry for other reasons. But as Burkhead makes clear, that's not the fact that there's some other innocent explanation doesn't mean that the officer's concern that this individual might have a weapon is not appropriate. And so all those facts, the trespass committed in the presence, the flight of another officer, even the other generic facts of the dangerous area, the initial moving away from the officers, the fact now that one person is loose and free, they don't know where he is, combined with Mr. Coleman's behavior, I would submit is a classic scenario for a Terry pat-down. And so for both those reasons, there was clearly reasonable suspicion to stop them for a crime that was being committed in the officer's presence and to pat down Mr. Coleman based on his behavior. But if for some reason the court disagrees with that conclusion, then I think Garcia holds and decides this case. When he attempted to break away and flee, he can't complain that he was subsequently seized and seek to suppress the evidence that he was trying to hide by his flight. And so for those reasons, I would respect the request that you affirm the distinction. I think Counsel Burkett has a lot more, got a lot more going on in it than this case did. I don't think it's on all fours. I would agree that factually there are differences, but the suggestion that, and this is very clear at the very end of Burkett, Your Honor, I believe, that it doesn't matter that there might be some other innocent explanation. I mean, that can always be argued. I think that's my point. Thank you. All right. Thank you. Thank you, Counsel. Going over the patent, I would just like to point out that Mr. McQuay, by all accounts, was completely compliant. And he also was immediately frisked without any questions asked. The testimony by Detective James was, I called for Mr. Coleman and Mr. McQuay to come back to our patrol car. As they come back to the patrol car, Mr. McQuay is being very loud. He's asking, why are we being stopped? But he's being kind of compliant. Mr. Coleman is being compliant, but he's constantly looking around. There was no indication in the record that Mr. McQuay resisted, hesitated. He went immediately over to the patrol car. And I'd like to also point the Court to a recent case that was issued after our briefing, U.S. v. IEV. It's a published case, but it just has the strings. It's 212 WL-593-7702, where this Court held with the Court's sister circuits that police officers may not justify a Terry search based on mere nervous or fidgety conduct. The rule that my opposing counsel is proposing is a categorical rule on the attenuation doctrine. And the Supreme Court has said time and time again in all its Fourth Amendment jurisprudence that categorical rules do not work. There's just too many nuances. It's too fact-specific, too case-specific to apply a categorical rule. You can't apply a rule as in Illinois v. Ward Law. They declined in that case to follow Illinois to apply a categorical rule that every time someone flees, that that by itself is enough for reasonable suspicion. And that is true with the attenuation doctrine. It's difficult to say that there was such a dissipation of the taint from the legal frisk here when really only minutes transpired between the legal frisk and the discovery of the evidence. There was no time to dissipate. There was no really intervening circumstance. And not all intervening circumstances, as Garcia makes clear, are the same. And for those reasons, we ask that because of the discovery of the gun, flowed directly from the frisk and was not so attenuated as to dissipate the taint of the frisk, we ask that the court reverse the district court's order. Okay, thank you, counsel. Thank you. Your time is up. Thank you. The case is well argued on both sides. U.S. v. Coleman shall be submitted.
judges: Fisher, Gould, Paez